BROWN, WEGNER & BERLINER LLP
Matthew K. Wegner (SBN 223062)
  mwegner@bwb-lawyers.com
William J. Brown, Jr. (SBN 192950)
  bill@bwb-lawyers.com
2603 Main Street, Suite 1050
Irvine, California 92614
Telephone: 949.705.0080
Facsimile: 949.794.4099

Attorneys for Plaintiff NUVASIVE, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MADSEN MEDICAL, INC., a Nevada corporation; KRIS MADSEN, an individual residing in Nevada; and DOES 1-10, inclusive.<br><br>　　　　Defendants. | Case No.  **'13CV2077 BTM RBB**<br><br>**NUVASIVE INC.'S COMPLAINT FOR:**<br>**(1) CONVERSION;**<br>**(2) COMMON COUNT;**<br>**(3) BREACH OF CONTRACT;**<br>**(4) DECLARATORY RELIEF;**<br>**(5) BREACH OF CONTRACT (NONDISCLOSURE AGREEMENT);**<br>**(6) BREACH OF CONTRACT (NON-COMPETE AGREEMENT); AND**<br>**(7) UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff NuVasive, Inc. ("NuVasive") alleges as follows:

## JURISDICTION AND VENUE

1. NuVasive is a corporation incorporated under the laws of Delaware, authorized to do business in California, with principal place of business in San Diego County, California.

2. Defendant Madsen Medical, Inc. ("MMI") is a corporation incorporated under the laws of Nevada, doing business in Clark County, Nevada. This Court has personal jurisdiction over MMI because it has consented to local jurisdiction via a forum selection clause under the written contract that is at issue in this litigation. NuVasive is informed and believes that MMI is the alter ego of Defendant Kris Madsen.

3. Defendant Kris Madsen ("KM") is an individual residing and domiciled in Nevada. KM is a principal of MMI. This Court has personal jurisdiction over KM because she has consented to local jurisdiction via a forum selection clause under the written contract that is at issue in this litigation.

4. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332 because the Plaintiff, on one hand, and Defendants, on the other hand, are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in this District and because all or a substantial part of the property that is the subject of this action is situated in this District, and because the parties have consented and agreed that venue is proper in San Diego pursuant to the forum selection clause under the written contract that is at issue in this litigation.

6. NuVasive is currently unaware of the identities of the parties named herein as "DOE" defendants. Upon information and belief, such DOE defendants are responsible for the damages suffered by NuVasive as pled herein, and therefore

NuVasive sues them by fictitious names. NuVasive will amend its Complaint at such time as the true names and capacities of the DOE defendants have been ascertained.

## FACTS COMMON TO ALL CLAIMS

### The Exclusive Sales Representative Agreement

7. On or about January 1, 2011, NuVasive and MMI entered into an Exclusive Sales Representative Agreement ("ESR Agreement"). The ESR Agreement set forth certain terms under which MMI, as Representative, would serve as NuVasive's exclusive sales representative for NuVasive's medical device products in certain territories within the State of Nevada, State of Arizona, State of Utah, and State of California. The ESR Agreement followed a number of prior distributor agreements between NuVasive and MMI over the course of approximately six years. KM signed the ESR Agreement on behalf of MMI. Under the ESR Agreement, MMI was paid commissions for obtaining orders for NuVasive products in the aforementioned territories.

8. The ESR Agreement provided, among other things, that MMI was to meet certain quotas for the sale and distribution of NuVasive products. ESR Agreement, Section 6.1.

9. The ESR Agreement conferred on NuVasive the right to terminate the ESR Agreement under certain circumstances. For example, NuVasive had the right to terminate MMI if it "default[ed] in the performance of any provision of the Agreement," (Section 11.2), and if MMI were deemed to be in "Poor Standing" under the quota provisions of Section 6.1. ESR Agreement, Section 11.3. In addition to certain termination rights that were available to NuVasive under the ESR Agreement, Section 11.5(d) of the ESR Agreement further entitled NuVasive, upon termination of MMI for a material breach, "to solicit, contract with, or hire any sales representatives of Representative [MMI]."

10. As a sales representative for NuVasive products, KM had access to confidential information at NuVasive, including trade secrets and other proprietary,

competitively-sensitive information.  Under the ESR Agreement, MMI and its employees and agents (including KM) agreed to protect NuVasive's proprietary, confidential information from disclosure.  Specifically, MMI and KM were, and are, obligated not to "use, disclose, disseminate or otherwise allow access to [NuVasive's] Confidential Information [as defined in the ESR Agreement] of the other Party to anyone other than to employees that have a need to know such Confidential Information . . . ."  ESR Agreement, Section 10.2.  The ESR Agreement sets forth penalties for the unauthorized disclosure of NuVasive's Confidential Information, including, but not limited to, injunctive relief.  ESR Agreement, Section 10.8.

11.   Pursuant to the ESR Agreement, MMI, KM, and any of MMI's employees and/or agents were prohibited from competing with NuVasive for a period of one year following the termination of the ESR Agreement.  Specifically, the ESR Agreement sets forth that

> [d]uring the Term and for a period of one (1) year following the expiration or termination [of the ESR Agreement], neither Representative nor any of Representatives' partners, employees, sub-contractors, sales personnel (whether employees of Representative or independent Contractors), affiliates or agents . . . shall (i) develop, represent, promote or otherwise sell within the Territory any lines or products that, in the Company's reasonable judgment, compete with the Products covered by this Agreement, (ii) solicit (directly or indirectly) any current or former customers of NuVasive to purchase any products or lines that are, in the Company's reasonable judgment, competitive with the Products covered by this Agreement, or (iii) solicit or offer work to, directly or indirectly, any of NuVasive's employees, agents or representatives.

ESR Agreement, Section 16.3.  Per the agreement of the parties, Section 16.3 of the ESR Agreement "shall be interpreted and enforced in accordance with the laws of the state in which the Representative last resides while performing services for

NuVasive," which in this instance is Nevada.  By its terms, Section 6.13 survived the termination of the ESR Agreement.

12. Section 12.1(a) of the ESR Agreement sets forth that "[a]ny and all suits hereunder shall be brought and resolved solely and exclusively in, and the parties hereby irrevocably consent to the exclusive jurisdiction and proper venue of, the state and federal courts located in the County of San Diego, State of California, USA, and waive any objections thereto based on any ground including improper venue and Forum Non-Conveniens."  ESR Agreement, Section 12.1(a).

13. "The prevailing party in any action or suit shall be entitled to recover all costs it incurred in connection therewith, including, without limitation, reasonable attorneys' fees."  ESR Agreement, Section 12.1(b).

**NuVasive Lawfully Exercises Its Termination Right Under The ESR Agreement**

14. MMI and KM engaged in various breaches of the ESR Agreement, including but not limited to, failing to meet the quota requirements of Section 6.1.

15. Consequently, on or about August 31, 2012, NuVasive exercised its right to terminate the ESR Agreement, and delivered notice of such termination to KM and MMI.

16. After the termination of the ESR Agreement, NuVasive exercised its contractual right to hire the following MMI representatives, among others: Matthew Smith, Stephan Kordonowy, and Frank Orlando.  In the time since then, MMI and KM (and others working on their behalf) have issued various threats toward these and other NuVasive employees, and have made false and disparaging comments about them and NuVasive in the presence of doctors, medical service providers, and/or current and former customers of NuVasive.

**MMI Fails To Return Property To NuVasive or Compensate For Same**

17. Under Section 11.1 of the ESR Agreement, MMI agreed that "following termination for any reason, Representative will be responsible for returning any outstanding inventory items and will be held responsible for missing items."  ESR

1. Agreement, Section 11.1. Defendants further agreed that, within ten days of termination of the Agreement, they were to return all "trademarks, trade names, patents, copyrights, designs, drawings, formulas or other data, photographs, samples, literature, sales aids of every kind." ESR Agreement, Section 11.5.

18. In the weeks following the termination of the ESR Agreement, NuVasive conducted, at its expense, an on-site inspection of all outstanding NuVasive products at hospitals and MMI's various facilities in Nevada. After an exhaustive inventory analysis, NuVasive determined that there was over $360,000 worth of equipment and product inventory missing, for which MMI was unable to account.

19. Based on its inventory analysis, NuVasive demanded that MMI reimburse NuVasive for the missing inventory, pursuant to MMI's obligations under the ESR Agreement. Specifically, in February 2013, NuVasive demanded payment of $325,227.05, which is the difference of the value of the outstanding inventory, less some commissions that NuVasive acknowledged were still owing to KM.

20. Over the course of several months from 2012, and into 2013, MMI evaded complying with the demand for compensation for the missing inventory.

21. As of the date of this complaint, MMI has failed to remit any money to NuVasive for the lost inventory, in direct breach of its obligations under the ESR Agreement.

**Madsen Begins Employment With A Competitor and Shares NuVasive's Confidential Information**

22. In or about June 2013, it came to NuVasive's attention that KM had accepted a position working with Stryker—a medical device company and direct competitor of NuVasive—at some point in the preceding year. NuVasive is informed and believes that KM's employment with Stryker includes her working on behalf of Stryker in the territories covered by the ESR Agreement.

23. NuVasive is informed and believes, and based thereon alleges, that beginning within one year of the August 31, 2012 termination of the ESR, and at

various times therein, KM engaged in discussions with various doctors, medical service providers, and current and former customers of NuVasive, in Nevada and elsewhere, for the purpose of soliciting business from them for her own benefit and that of her new employer, Stryker.

24. NuVasive is also aware of numerous instances in which KM, and/or agents working on her behalf, have made threatening, defamatory, and disparaging statements about NuVasive and NuVasive employees to third parties within the medical profession.

25. NuVasive is informed and believes, and based thereon alleges, that in addition to making efforts to solicit business on behalf of herself and Stryker, KM has disclosed to Stryker and others NuVasive's Confidential Information and/or trade secrets in direct violation of her non-disclosure obligations under the ESR Agreement.

## CLAIMS FOR RELIEF

### First Cause of Action

**(Conversion - Against All Defendants)**

26. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 25 above.

27. Under the ESR Agreement, NuVasive provided to MMI various items, including inventory, Products, samples, information and promotional materials that are the rightful property of NuVasive. Upon termination of the ESR Agreement, NuVasive was entitled to recover possession of all such property. NuVasive does not consent to KM or MMI continuing to possess NuVasive 's property.

28. NuVasive has demanded that Defendants return the items that NuVasive provided to MMI. Defendants each have intentionally failed to relinquish possession of such items to NuVasive. On information and belief, Defendants remain in possession of the property that rightfully should be in the possession of NuVasive.

29. The wrongfully possession of NuVasive 's property by Defendants has caused NuVasive to be deprived of the benefits of ownership of the property and the

commercial value of the property such that NuVasive has been harmed in an amount not less than $325,227.05 (exclusive of interest), the exact amount of which will be proven at trial.

## Second Cause of Action

### (Common Count - Against MMI)

30. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 29 above.

31. Under the ESR Agreement, NuVasive and MMI operated under an arrangement whereby NuVasive provided inventory, products, and other materials to be used in the sales activities conducted by MMI.

32. NuVasive has kept and updated an accounting of the items that were provided to MMI and KM, including a record of what has and has not been returned to NuVasive. NuVasive has applied debit and credits according to the value of the items and amounts to be credited to MMI related to sales commissions.

33. MMI has failed to pay the balance set forth in the account maintained by NuVasive. MMI owes NuVasive $325,227.05 on the account.

## Third Cause of Action

### (Breach of Contract - Against All Defendants)

34. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 33 above.

35. On or about January 1, 2011, NuVasive and MMI consented to entering into the ESR Agreement for the purpose of performing lawful business activities. An authorized representative executed the ESR Agreement on behalf of NuVasive and MMI.

36. At the time of entering the ESR Agreement, NuVasive and MMI each were duly constituted legal entities with capacity to contract.

37. NuVasive substantially performed its obligations under the ESR Agreement, to the extent such obligations were not otherwise excused.

38. MMI failed to perform its obligations under the ESR Agreement to return all NuVasive property to NuVasive, or otherwise take responsibility for the cost of the same.

39. MMI's failure to abide by the ESR Agreement caused harm to NuVasive. MMI failed to account for, or reimburse NuVasive for, outstanding inventory such that NuVasive has been wrongfully deprived of no less than $325,227.05 in goods or payment (exclusive of interest).

## Fourth Cause of Action

### (Declaratory Relief – 28 U.S.C. § 2201 et. seq. – Against MMI)

40. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 39 above.

41. NuVasive claims that (1) NuVasive properly terminated the ESR Agreement on or about August 31, 2012, and (2) NuVasive properly solicited and/or hired MMI representatives following the termination of the ESR Agreement. MMI claims that (1) NuVasive's termination of the ESR Agreement was improper, and that (2) NuVasive's solicitation and/or hiring of MMI representatives following the termination of the ESR Agreement was illegal. (Indeed, MMI has accused NuVasive employees of engaging in an illegal "conspiracy" to effectuate NuVasive's termination of the ESR Agreement and subsequent hiring of various MMI representatives.) By reason of these conflicting claims, the existence of substantial legal rights and obligations has been placed in doubt. Further, NuVasive alleges that substantial monetary damages, in an amount exceeding $75,000.00, exclusive of interests and costs, have accrued and will continue to accrue, in part, because of the uncertainty regarding the parties' rights and obligations under the ESR Agreement.

42. Accordingly, NuVasive seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that (1) NuVasive was within its legal rights to terminate the ESR Agreement, and (2) NuVasive was within its legal rights to solicit and/or hire MMI representatives following the termination of the ESR Agreement.

## Fifth Cause of Action

**(Breach of Contract (Nondisclosure Agreement) - Against All Defendants)**

43. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 42 above.

44. Under Section 10 (and subparts) of the ESR Agreement, MMI and KM were obligated to ensure that they and MMI employees would protect NuVasive's proprietary, confidential information from disclosure.

45. NuVasive substantially performed its obligations under the ESR Agreement, to the extent such obligations were not otherwise excused.

46. MMI, KM, and their employees and/or agents have improperly disclosed and used NuVasive's information, as described in more detail herein, in direct breach of the non-disclosure provisions of the ESR Agreement.

47. The aforementioned disclosures have caused harm to NuVasive by, among other things, improperly reducing NuVasive's sales and increasing NuVasive's expenses, in amounts to be proven at trial.

## Sixth Cause of Action

**(Breach of Non-Compete Agreement - Against KM)**

48. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 47 above.

49. Under the ESR Agreement, KM was contractually prohibited from engaging in certain activities in competition with NuVasive for a period of one year after the termination of the ESR Agreement.  ESR Agreement, Section 16.1.

50. NuVasive substantially performed its obligations under the ESR Agreement, to the extent such obligations were not otherwise excused.

51. KM has breached Section 16.1 of the ESR Agreement by accepting a position with NuVasive's competitor, Stryker; engaging in overtures with doctors, medical services providers, and current and former NuVasive customers within the territories covered by the ESR Agreement; disparaging NuVasive and its employees

(as discussed herein); and taking other action to solicit opportunities for herself and Stryker within the territories covered by the ESR Agreement.

52. KM's breaches of the ESR Agreement have caused harm to NuVasive by, among other things, improperly reducing NuVasive's sales and increasing NuVasive's expenses, in amounts to be proven at trial.

## Seventh Cause of Action

### (Unfair Competition -- Against All Defendants)

53. NuVasive realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 52 above.

54. Beginning at an exact date unknown to NuVasive, but at least since August 31, 2012, MMI, KM, and their agents have committed acts of unfair competition, as defined by California Business and Professions Code Section 17200 by, among other things, violating various provisions of the ESR Agreement, publicly disparaging NuVasive and/or its employees, and disclosing NuVasive's Confidential Information for the purpose of harming NuVasive in the marketplace.

55. Defendants' wrongful acts as alleged throughout this Complaint constitute unfair, fraudulent, and/or unlawful acts in violation of Section 17200.

56. Defendants' acts of unfair competition have caused and continue to cause damage and injury to NuVasive in its money and/or property, while resulting in increased profits and/or unjust enrichment for Defendants.

57. NuVasive has suffered, and continues to suffer, irreparable harm by reason of Defendants' acts described herein—namely, making false and disparaging statements about NuVasive and its employees, violating the terms of the Non-Compete Agreement (as to KM), and disclosing NuVasive's Confidential Information. NuVasive has no adequate remedy at law, and cannot be adequately compensated for the damages and injuries it has sustained and will sustain if Defendants are permitted to continue with this conduct. As such, NuVasive seeks a preliminary and permanent injunction, as expressly permitted under Business & Professions Code Section 17200,

enjoining and restraining Defendants and their agents from engaging in the aforementioned conduct.

58. As a direct and proximate result of the aforementioned conduct, NuVasive has suffered losses of money and/or property in an amount yet to be ascertained, but which exceeds $75,000 (exclusive of interest).

## DEMAND FOR JUDGMENT

Therefore, Plaintiff NuVasive, Inc. respectfully requests judgment:

a. For compensatory damages in an amount to be proven at trial.

b. For exemplary damages.

c. For a permanent injunction enjoining Defendants from making false and disparaging statements about NuVasive and its employees, violating the terms of the Non-Compete Agreement (as to Defendant Kris Madsen), and disclosing NuVasive's Confidential Information for any purpose.

d. For a judicial declaration pursuant to 28 U.S.C. §§ 2201-2202 that (1) NuVasive's termination of the ESR Agreement and (2) subsequent hiring of Madsen Medical, Inc. representatives were lawful and not in breach of the ESR Agreement.

e. For its legal expenses, including court costs, attorneys' fees and other costs, as permitted in the ESR Agreement and otherwise permitted by law.

f. Plaintiff be awarded any other just relief as the Court deems appropriate.

DATED: September 5, 2013     BROWN, WEGNER & BERLINER LLP

                                         s/ Matthew K. Wegner

By:  Matthew K. Wegner
       William J. Brown, Jr.

Attorneys for Plaintiff NUVASIVE, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff NuVasive, Inc. demands a trial by jury.

DATED: September 5, 2013     BROWN, WEGNER & BERLINER LLP

s/ Matthew K. Wegner

By:  Matthew K. Wegner
     William J. Brown, Jr.

Attorneys for Plaintiff NUVASIVE, INC.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NUVASIVE, INC., a Delaware corporation

## DEFENDANTS
MADSEN MEDICAL, INC., a Nevada corporation

**(b)** County of Residence of First Listed Plaintiff: San Diego, California
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Clark County, Nevada
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brown, Wegner & Berliner LLP
2603 Main Street, Suite 1050, Irvine, California 92614
Telephone 949.705.0080

Attorneys *(If Known)*
'13CV2077 BTM RBB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / **Other:** / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Action to recover for various breach of contract, conversion, common counts claims.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Exceeds $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 09/05/2013
SIGNATURE OF ATTORNEY OF RECORD: s/ Matthew K. Wegner

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____