UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>vs.<br><br>MADSEN MEDICAL, INC., et al.,<br><br>                              Defendants. | Case No.:  13cv2077 BTM(RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE** |
| MADSEN MEDICAL, INC., a Nevada corporation,<br><br>                              Counterclaimant,<br><br>vs.<br><br>NUVASIVE, INC., a Delaware corporation,<br><br>                              Counterdefendant. | |

Defendants Kris Madsen and Madsen Medical, Inc. ("MMI") have filed a motion for sanctions against NuVasive, Inc., for its alleged spoliation of evidence. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## DISCUSSION

Defendants seek sanctions for NuVasive's failure to preserve evidence, specifically, Stephen Kordonowy's text messages prior to 2014, Ed Graubart's text messages prior to 2014, Jeff Moore's text messages prior to September 20, 2012, and Frank Orlando's text messages prior to 2013.  Defendants contend that these text messages could have been evidence of secret coordination between NuVasive and former MMI employees to effect the termination of MMI's contractual relationship with NuVasive and then have NuVasive hire MMI's sales personnel as its own employees.  Defendants seek sanctions in the form of the following adverse inference jury instruction:

> NuVasive failed to prevent the destruction of relevant evidence for MMI's and Ms. Madsen's use in this litigation.  The evidence pertains to the coordination between NuVasive and former MMI personnel of plans to interfere with MMI's business and to remove MMI from the NuVasive distribution chain. The evidence also pertains to NuVasive's solicitation of MMI personnel before MMI was terminated as a distributor. NuVasive's failure to preserve evidence resulted from NuVasive's failure to perform its discovery obligations.
>
> You may presume from NuVasive's destruction of evidence, that the evidence destroyed was relevant to MMI's case and that the destroyed evidence was favorable to MMI and unfavorable to NuVasive.

Defendants also seek attorney's fees and costs for bringing the motion for sanctions in the amount of $10,000.

In deciding what spoliation sanction to impose, courts generally consider the following three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. <u>Apple, Inc. v. Samsung Electronics Co., Ltd.</u>, 888 F. Supp. 2d 976, 992 (2012). The prejudice inquiry "looks to whether the [spoiling party's] actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." <u>Leon v. IDX Systems Corp.</u>, 464 F.3d 951, 960 (9th Cir. 2006) (quoting <u>United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.</u>, 857 F.2d 600, 604 (9th Cir. 1988)).

Defendants have established that NuVasive destroyed evidence that it was under a duty to preserve. District courts in this Circuit have held that "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." <u>In re Napster, Inc. Copyright Litig.</u>, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).

As early as August 2012, Defendants had informed NuVasive of its duty to preserve evidence of communications between NuVasive and MMI employees, including texts and/or emails in the possession of Jeff Moore and Ed Graubart. (Ex. 7 to Huang Decl.) At this time, NuVasive was also made aware that Defendants were claiming that NuVasive was improperly interfering with the

1  relationship between MMI and its employees and the relationship between MMI
2  and its physician customers and that Graubart and/or Moore were conspiring to
3  oust Madsen. (Exs. 6 and 7 to Huang Decl.)

4  On September 6, 2013, one day after NuVasive commenced this action,
5  MMI filed a lawsuit in Nevada which named as defendants Jeff Moore and Ed
6  Graubart among others. MMI filed its counterclaims in this lawsuit on November
7  13, 2013.

8  Although NuVasive notified its employees of a litigation hold in August 2012
9  and again in September 2013 (NuVasive Exs. 1, 2), NuVasive clearly did not take
10 adequate steps to make sure that its employees complied with the litigation hold.
11 In January 2014, NuVasive asked Stephen Kordonowy to bring his phone to San
12 Diego for imaging. (Kordonowy Decl. ¶ 5.) Kordonowy brought his current
13 phone instead of the phone that he used prior to MMI's termination. (Id.) His
14 previous phone was sitting in his desk drawer, and later, in mid-2014, Kordonowy
15 wiped the phone clean before giving it to his son. (Id. at ¶ 3.)

16 Jeff Moore was not asked to turn over his phone until January 2014.
17 (Moore Decl. ¶ 3.) At this time, NuVasive's attorneys discovered that all of
18 Moore's text messages prior to September 20, 2012, were missing. (Wegner
19 Decl. ¶ 5.) NuVasive suggests that the missing text messages may have been
20 the result of an iPhone iOS 6 software update released on September 19, 2012.

Ed Graubart's text messages during the relevant time period were lost because Graubart turned in his phone for an upgrade on two occasions after MMI's termination. (Graubart Decl. ¶ 6.) Pursuant to company policy, Graubart's phones were likely wiped and recycled with a third party vendor. (Garrett Decl. ¶¶ 9-10.)

Frank Orlando testified that he did not provide the phone he used in 2012 to NuVasive until 2013 and that he may have deleted relevant text messages. (Orlando Dep. (Huang Ex. 17) at 202:2-15; 203:8-204:22.)

In light of all of the text messages that were lost or deleted, the Court concludes that NuVasive was at fault for not enforcing compliance with the litigation hold. Although it is true that Defendants should have taken steps to preserve the text messages of Orlando and Kordonowy while they were still working for MMI, NuVasive still had a duty to preserve the evidence and failed to do so.

The Court also finds that Defendants have made a sufficient showing of prejudice. Defendants have provided evidence of texts that were exchanged between Pinto and Moore, Kordonowy, and Orlando shortly before MMI's termination. (Ex. 2 to Madsen Decl.) These text messages reference decisions being made by NuVasive regarding MMI/Madsen and assurances by Graubart regarding his support for the MMI sales representatives. It can reasonably be

inferred from these texts, viewed together with other evidence, that the MMI sales representatives were talking to NuVasive about plans to terminate MMI and have the sales representatives work directly for NuVasive. Accordingly, texts during the relevant time period to or from Moore, Kordonowy, Graubart,[1] and Orlando might have furthered MMI's claims.[2]

NuVasive argues that Defendants have obtained most of the deleted/lost text messages through other individuals. But NuVasive cannot provide any assurance that Defendants have all of the relevant text messages.

The Court finds that a properly tailored adverse inference instruction is appropriate and will not cause "substantial unfairness" to NuVasive. The Court will give the following instruction:

> NuVasive has failed to prevent the destruction of evidence for MMI's and Ms. Madsen's use in this litigation after its duty to preserve the evidence arose. After considering all of the pertinent facts and circumstances, you may, but are not obligated to, infer that the

---

[1] NuVasive argues that Defendants have failed to show that Graubart sent any relevant text messages. However, Graubart testified that he texted with Moore and Smith. (Graubart Dep. (NuVasive Ex. 22) at 12:1-12.) Although he did not recall texting Orlando, and Kordonowy claims that he mainly emailed Graubart, it is certainly possible that Graubart sent relevant texts to Orlando and Kordonowy.

[2] Although MMI may not need to establish the existence of a secret plot before the termination to prevail on its claims for intentional interference with contract and intentional interference with prospective economic advantage, such evidence may be relevant to MMI's punitive damages claim.

evidence destroyed was favorable to MMI and unfavorable to NuVasive.

The Court denies Defendants' request for attorney's fees and costs because Defendants were also partially at fault for not taking steps to preserve text messages of Kordonowy and Orlando while they were still working for MMI.

## CONCLUSION

For the reasons discussed above, Defendants' motion for sanctions for spoliation of evidence is **GRANTED IN PART** and **DENIED IN PART**. The Court will give an adverse inference instruction as set forth above. The Court denies Defendants' request for attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: July 22, 2015

Barry Ted Moskowitz, Chief Judge
United States District Court