UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MADSEN MEDICAL, INC., et al.,<br><br>　　　　　　　　　Defendants. | Case No.:  13cv2077 BTM(RBB)<br><br>**ORDER DENYING MOTION FOR AN AMENDED INSTRUCTION REGARDING SPOLIATION** |
| MADSEN MEDICAL, INC., a Nevada corporation,<br><br>　　　　　　　　　Counterclaimant,<br><br>vs.<br><br>NUVASIVE, INC., a Delaware corporation,<br><br>　　　　　　　　　Counterdefendant. | |

　　　Plaintiff and Counterdefendant Nuvasive, Inc. ("Nuvasive"), has filed a motion for an amended jury instruction regarding spoliation. For the reasons discussed below, Nuvasive's motion is **DENIED**.

//

//

## I. BACKGROUND

Previously, Defendants Kris Madsen ("Madsen") and Madsen Medical, Inc. ("MMI"), filed a motion for sanctions for NuVasive's spoliation of evidence. In an order filed on July 22, 2015, the Court granted in part Defendants' motion and ruled that it would give the following adverse inference instruction:

> NuVasive has failed to prevent the destruction of evidence for MMI's and Ms. Madsen's use in this litigation after its duty to preserve the evidence arose. After considering all of the pertinent facts and circumstances, you may, but are not obligated to, infer that the evidence destroyed was favorable to MMI and unfavorable to NuVasive.

## II. DISCUSSION

NuVasive seeks to amend the adverse inference jury instruction to allow the jury to draw an adverse inference from Defendants' alleged spoliation of evidence. NuVasive's proposed instruction is:

> NuVasive, MMI, and Ms. Madsen each failed to prevent the destruction of relevant evidence for use in this litigation. After considering all of the pertinent facts and circumstances, you may, but are not obligated

to, infer that the evidence destroyed was favorable to one party or another.

The Court does not find that NuVasive's amended instruction is warranted.

As discussed in the Court's prior order, in deciding what spoliation sanction to impose, courts generally consider the following three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. Apple, Inc. v. Samsung Electronics Co., Ltd., 888 F. Supp. 2d 976, 992 (2012). The prejudice inquiry "looks to whether the [spoiling party's] actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." Leon v. IDX Systems Corp., 464 F.3d 951, 960 (9th Cir. 2006) (quoting United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., 857 F.2d 600, 604 (9th Cir. 1988)).

NuVasive argues that Defendants themselves failed to preserve evidence. Specifically, NuVasive alleges that: (1) Defendants failed to disclose the transcript of a secret deposition of James Pinto until a year after this lawsuit was filed; (2) Defendants failed to preserve text messages of Pinto, Stephen Kordonowy, and Frank Orlando; and (3) Kris Madsen intentionally wiped the iPad that was issued to her by NuVasive.

1    The deposition transcript does not pertain to spoliation of evidence. Even
2 though NuVasive disputes the timeliness of the production of the transcript, the
3 transcript was provided to NuVasive.

4    As for the iPad, it is unclear whether the iPad tested by Ryan Maxwell, who
5 was hired by NuVasive to analyze and preserve data on certain iPhones and
6 iPads, was in the same condition as when it was returned by Kris Madsen. Madsen
7 returned the iPad in September 2012. (Madsen Decl. ¶ 5.) On December 3, 2013,
8 more than a year later, Maxwell received an iPad "described as belonging to Kris
9 Madsen." (Maxwell Decl. ¶ 3.) Maxwell does not provide a serial number for this
10 iPad. Upon inspection, Maxwell observed that the iPad was in a state of default
11 configuration. (Id.) NuVasive told Maxwell that no forensic preservation would be
12 required at that time. (Id.)

13   On October 27, 2014, more than two years after Madsen returned her iPad,
14 Maxwell received a FedEx delivery of an iPad described as belonging to Kris
15 Madsen with a serial number of DLXGCZRDFJ3. (Maxwell Decl. ¶ 4.) It appears
16 that an iPad with this serial number was assigned to Madsen. (NuVasive Ex. 11.)
17 Maxwell observed that the iPad exhibited the same default configuration state as
18 the iPad he examined in December 2013. (Maxwell Decl. ¶ 4.) Based on his
19 analysis of the data preserved on the iPad, the dates of the database files "indicate
20 that the iPad was likely reset on September 7, 2012." (Maxwell Decl. ¶ 6.)

Due to the amount of time that passed before Maxwell examined the iPad returned by Madsen and the lack of information regarding custody of the iPad in the interim, the Court is unable to conclude that when Maxwell examined the iPad, it was in the same condition as it was when returned by Madsen. Furthermore, there is no showing that Madsen used the iPad to email or create documents that might be relevant to this litigation. According to Madsen, to the best of her recollection, "the only information on the iPad was the pre-loaded sales information provided by NuVasive. I do not recall any information specific to me that was on the iPad." (Madsen Decl. ¶ 5.)

Defendants failed to preserve text messages of Pinto, Kordonowy and Orlando. However, Defendants' failure is mitigated by the fact that the time period in question was very short. By mid-August of 2012, Defendants had informed NuVasive of its duty to preserve evidence of communications between NuVasive and MMI employees. [Docs. 109-2, 109-3.] Orlando and Kordonowy left to work for NuVasive starting on August 31, 2012. (Madsen Decl. ¶ 4.) Pinto was terminated as an employee in September 2012. (Id.)

Madsen should have taken steps to preserve evidence herself given that she instructed NuVasive to do so. However, taking into consideration Defendants' lack of knowledge that MMI would be terminated on August 31, 2012, and the upheaval

Defendants were experiencing at this time, their failure to preserve text messages is understandable.

In contrast, as explained in the Court's prior order, NuVasive had plenty of time to take steps to ensure that its employees complied with the litigation hold but failed to do so. Jeff Moore was not asked to turn over his phone until January 2014, at which time it was discovered that all of Moore's text messages prior to September 20, 2012 were missing. In mid-2014, Kordonowy wiped his phone clean before giving it to his son. Ed Graubart turned in his phone for an upgrade on two occasions after MMI's termination. Frank Orlando did not provide the phone he used in 2012 to NuVasive until 2013, at which point Orlando believes he may have deleted relevant text messages. Defendants' culpability in failing to preserve text messages during a half-month or month period pales in comparison to that of NuVasive's prolonged negligence.

Furthermore, NuVasive has not shown prejudice. Because Orlando and Kordonowy ended up working for NuVasive, NuVasive had the ability to ask them about their text messages. As for Pinto, NuVasive has not established that Pinto's text messages might have helped NuVasive's case. NuVasive suggests that the missing Pinto text messages cut against the theory that there was a secret plot against Defendants. NuVasive points to a text message from Pinto to Orlando which refers to talks between NuVasive and Madsen about transitioning to a direct

1  sales force.  However, even though NuVasive may have had talks with Madsen
2  about the possibility of entering into a deal with MMI whereby MMI's salesforce
3  would work directly for NuVasive, that does not mean that NuVasive was not also
4  actively pursuing the possibility of cutting MMI and Madsen out of the deal and
5  hiring their salesforce from under them.

6  NuVasive has not established that it is entitled to a spoliation sanction
7  against Defendants.  Therefore, the Court declines to amend the adverse inference
8  jury instruction so that it is bilateral.  However, the Court will allow both sides to
9  offer evidence at trial regarding the other side's failure to preserve evidence.  This
10 evidence would be part of the "pertinent facts and circumstances" the jury can
11 consider in determining whether to make an adverse inference against NuVasive.

12 In their Opposition, Defendants request that the Court sanction NuVasive
13 under Fed. R. Civ. P. 11 in the amount of the attorney's fees incurred by
14 Defendants in responding to NuVasive's motion.  When sanctions are sought
15 under Rule 11, counsel must comply with Rule 11's "safe harbor" provision, which
16 requires that counsel serve the Rule 11 motion but not file the motion if the
17 challenged claim or filing is withdrawn or corrected within 21 days after service.
18 Fed. R.Civ.P. 11(c)(2).  Compliance with the safe harbor rule is mandatory.
19 Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 789 (9th Cir. 2001).
20

It does not appear that Defendants have satisfied the safe-harbor requirement. Therefore, Defendants' motion for sanctions under Rule 11 is denied.

### III. CONCLUSION

For the reasons discussed above, NuVasive's motion for an amended jury instruction [Doc. 167] is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 24, 2015

_____
Barry Ted Moskowitz, Chief Judge
United States District Court