UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br> v.<br><br>MADSEN MEDICAL, INC., a Nevada corporation; KRIS MADSEN, an individual residing in Nevada; and DOES 1-10, inclusive,<br><br>       Defendants.<br><br>MADSEN MEDICAL, INC., a Nevada corporation,<br><br>       Counterclaimant,<br><br> v.<br><br>NUVASIVE, INC., a Delaware corporation,<br><br>       Counterdefendant. | Case No.:  13cv2077 BTM(RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MADSEN'S MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS AND DENYING NUVASIVE'S MOTION TO RETAX COSTS** |

   Defendant and counterclaimant Madsen Medical, Inc. ("MMI") and defendant Kris Madsen (collectively "Madsen") have filed a Motion for Attorney's Fees and Non-Taxable Costs.  NuVasive, Inc. ("NuVasive") has filed a Motion to Retax Costs.  For the reasons discussed below, Madsen's motion for attorney's fees and non-taxable costs is **GRANTED IN PART** and **DENIED IN PART**, and NuVasive's

motion to retax costs is **DENIED**.

## I. BACKGROUND

On September 5, 2013, NuVasive commenced this action against MMI and Kris Madsen. NuVasive asserted claims based on MMI's alleged failure to return items to NuVasive upon MMI's termination as well as claims for breach of the ESR Agreement (breach of nondisclosure agreement and noncompetition agreement). Subsequently, NuVasive added additional claims including tort claims for intentional interference with contractual relations.

MMI asserted counterclaims for intentional interference with contractual relationships, breach of the ESR Agreement by soliciting and hiring MMI's employees, intentional interference with prospective economic advantage, breach of contract relating to failure to pay commissions, unfair competition, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

NuVasive abandoned its claim for breach of the noncompetition agreement in the ESR Agreement after Madsen filed a motion to dismiss. NuVasive also did not oppose Madsen's Motion for Judgment on the Pleadings on NuVasive's claim that MMI is the alter ego of Kris Madsen.

After cross-motions for summary judgment were filed, the Court granted summary judgment in favor of Madsen on NuVasive's claims based on allegedly missing "sets" of instruments and implants (as opposed to "disposables") and NuVasive's breach of contract and tort claims based on threats and disparagement. The Court granted summary judgment in favor of NuVasive on MMI's claim for breach of § 11.5(d) of the ESR Agreement by soliciting and hiring MMI's sales representatives and breach of the implied covenant of good faith and fair dealing.

By the time of trial, the remaining claims of NuVasive included claims based on missing disposables (conversion, common count, breach of contract) and

claims based on disclosure of confidential information (breach of contract and unfair competition). The claims of MMI to be tried included intentional interference with contractual relations, intentional interference with prospective economic advantage, breach of the ESR Agreement (failure to pay commissions), unfair competition, and unjust enrichment.

Just before trial, NuVasive voluntarily dismissed with prejudice its claims based on disclosure of confidential information. During trial, NuVasive dismissed its remaining claims based on missing disposables after NuVasive witness Derrick Von Stein testified that his chart of lost inventory was unreliable. On February 17, 2016, judgment was entered in favor of Madsen on NuVasive's affirmative claims for relief.

After a thirteen-day trial, MMI prevailed on all of its counterclaims that were tried. The jury awarded MMI (1) $294,805.16 in in unpaid commissions (breach of the ESR Agreement); (2) $7.5 million in lost profits on the tort claims; (3) $14 million in unjust enrichment on the tort claims (disgorgement of profits earned by NuVasive); and (4) $20 million in punitive damages. On March 18, 2016, the Court entered judgment in favor of MMI in the amount of $27,794.805.16. The judgment did not include the award for unjust enrichment.

## II. DISCUSSION

A. Attorney's Fees

Madsen moves for an award of attorney's fees in the total amount of $1,184,066.03.[1] Madsen requests that of these fees, $637,165.27 be allocated as having been incurred in connection with the litigation of NuVasive's affirmative

---

[1] This number reflects additional attorney's fees requested in the Reply. These attorney's fees include fees incurred after March 31, 2016, and some fees inadvertently omitted on prior invoices.

claims against Madsen. For the reasons discussed below, the Court grants attorney's fees but reduces them to $1,094,508.03, with $356,661.96 allocated to NuVasive's affirmative claims.

1. Prevailing Party under ESR Agreement

NuVasive contends that MMI's interference counterclaims relate to MMI's employment agreements with its former employees, not the ESR Agreement, and that MMI is not the prevailing party under the ESR Agreement. But, as discussed below, the attorney's fees clause in the ESR Agreement is worded so broadly that it extends to MMI's interference counterclaims and renders MMI the "prevailing party" as to the entire action.

Section 12.1(b) of the ESR Agreement provides: "The prevailing party in any action or suit shall be entitled to recover all costs it incurred in connection therewith, including, without limitation, reasonable attorney's fees."

Under Cal. Civ. Code § 1717, upon which NuVasive relies, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). The "party prevailing on the contract" is defined as "the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b). The court may also determine that there is no prevailing party on the contract. Id.

However, parties are free to draft attorney fee clauses that are broader than the type of clause discussed in section 1717. Cal. Civ. Proc. Code § 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties."

1    Section 1021 allows parties to agree to an attorney fee clause that entitles
2 the prevailing party in litigation to recover fees whether the litigation sounds in
3 contract, tort, or both.  <u>Maynard v. BTI Group, Inc.</u>, 216 Cal. App. 4th 984 (2013).
4 If the attorney fee provision is broad enough to encompass tort claims, "the
5 prevailing party entitled to recover fees normally will be the party whose net
6 recovery is greater, in the sense of most accomplishing its litigation objectives,
7 whether or not that party prevailed on a contract cause of action."  <u>Id.</u> at 992.
8 Furthermore, "in awarding fees to the prevailing party it [is] unnecessary to
9 apportion fees between those claims."  <u>Id.</u>

10   In <u>Maynard</u>, the agreement at issue was a listing agreement between the
11 seller of a retail business and the broker.  The agreement contained the following
12 attorney fee clause: "All parties to this agreement agree to mediate, in good faith,
13 any dispute prior to initiating arbitration or litigation.  The prevailing party in the
14 event of arbitration or litigation shall be entitled to costs and reasonable attorney
15 fees."  The California Court of Appeal found that "an attorney fee provision
16 awarding fees based on the outcome of 'any dispute' encompasses all claims,
17 whether in contract, tort or otherwise."  <u>Id.</u> at 993.  Therefore, the court determined
18 that the plaintiff was the prevailing party because she obtained a net recovery in
19 the action, even though she recovered on a negligence claim rather than a breach
20 of contract cause of action.

21   Similarly, in <u>Gonzales v. Personal Storage, Inc.</u>, 56 Cal. App. 4th 464 (1997),
22 a customer sued a storage facility after all of her belongings were stolen from the
23 facility by a woman falsely claiming to be the plaintiff.  The jury awarded her
24 damages for breach of contract, conversion, and emotional distress.  The trial court
25 denied the plaintiff's request for attorney's fees, appearing to rely on the fact that
26 the plaintiff was awarded a substantial sum in tort damages.  <u>Id.</u> at 480.   The
27 California Court of Appeal found that the trial court had erred because the attorney
28 fee provision in the lease agreement provided: "In the event of any legal action or

proceeding between the parties hereto, reasonable attorney's fees and expenses of the prevailing party in any such action or proceeding may be added to the judgment therein." Id. at 478. The court explained that by its terms, the attorney fee clause applies to "any legal action" and that clauses with such broad language permit the recovery of attorney fees in tort as well as contract actions. Id. at 480. See also Thompson v. Miller, 112 Cal. App. 4th 327 (2003) (holding that Share Purchase Agreement's attorney fee provision gave the defendants the right to recover attorney's fees in defending against tort claims because the provision stated that the prevailing party "in any dispute under this Agreement shall be entitled to reasonable attorneys fees incurred in such dispute."); Xuereb v. Marcus & Millichap, Inc., 3 Cal. App. 4th 1338 (1992) (holding that Purchase Agreement's attorney fee clause, which entitled the prevailing party in a lawsuit arising from the Agreement to attorney's fees, encompassed acts and omissions occurring in connection with the Purchase Agreement and the entire transaction).

Here, the attorney fee clause is extremely broad, entitling the prevailing party "in any action or suit" to recover reasonable attorney's fees. To the extent that there has to be some nexus between the ESR Agreement and the counterclaims, the counterclaims certainly relate to the ESR Agreement because NuVasive sought to defend its actions based on the language of the ESR Agreement and MMI sought damages for lost profits due to termination of the ESR Agreement. Accordingly, section 1717 does not govern, and Madsen is entitled to attorney's fees on both the claim for breach of the ESR agreement and the tort claims.

Looking at the "net monetary recovery,"[2] there is no question that Madsen is

---

[2] Cal. Civ. Proc. Code § 1033.5(a)(10)(A) provides that allowable costs include attorney fees when authorized by contract. For purposes of determining entitlement to allowable costs, the court must determine who the "prevailing party" is. Cal. Civ. Proc. Code § 1032(a)(4). The "prevailing party" includes "the party with a net monetary recovery." Id.

the "prevailing party" in the action.  Madsen obtained a judgment in the amount of $27,794.805.16.  NuVasive did not recover anything.  Therefore, Madsen is entitled to an award of reasonable attorney's fees.

### 2. Reasonable Attorney's Fees

For the most part, the Court finds the requested attorney's fees to be reasonable.  However, the Court makes some reductions as set forth below.  The Court also reallocates the fees as between MMI's counterclaims and NuVasive's affirmative claims.

Under California law, the fee setting determination ordinarily begins with the "lodestar," the number of hours reasonably expended multiplied by the reasonable hourly rate.  PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000).  To determine the reasonable hourly rate, the court looks to the "hourly rate prevailing in the community for similar work."  Id.  The lodestar is the basic fee for comparable legal services in the community and may be adjusted by the court based on factors including (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (5) the contingent nature of the fee award.  Serrano v. Priest, 20 Cal. 3d 24, 49 (1977).

The Court does not grant the fees billed by Marquis Aurbach Coffing P.C. ("MAC") (Ex. B to Madsen Decl.)  MAC represented MMI through September 2012, and it appears from the bills that most of the work MAC performed was in connection with determining potential claims against MMI's former employees and preparing the Complaint for the Nevada action.  Therefore, the Court does not find it appropriate to award these fees.

The Court also declines to award most of the fees billed by Mr. W. Leslie Sully, Jr.  Mr. Sully's bills are for the time period from July 30, 2012-February 8, 2013.  Madsen claims that Mr. Sully represented MMI in responding to NuVasive's

lost inventory claims. It appears that NuVasive's claim that MMI was responsible for more than $363,000 in outstanding inventory did not surface until Mid-November 21, 2012. (Ex. C to Madsen Decl.)  The only entries that specifically mention inventory are the December 11, 2012 entry and the December 13, 2012 entry, totaling $125. The other entries are nonspecific and appear to relate to the Nevada action. Accordingly, the Court grants only $125 of Mr. Sully's fees, which will be allocated to NuVasive's affirmative claims.

The Adams Law Group, Ltd. ("Adams"), took over for Mr. Sully, and Madsen has submitted Adams's invoices for the period from late December 2012 through November 2013. (Ex. E to Madsen Decl.) Madsen seeks and the Court grants the fees for work performed from September 5, 2013, when this case was filed, until November 13, 2013. The allowable fees from September 5, 2013-November 13, 2013 total $3,278.50,[3] to be allocated to NuVasive's affirmative claims.

Goldberg, Lowenstein & Weatherwax LLP ("GLW") served as counsel for Madsen in this action through November 2014. (Huang Decl. ¶ 16.) Katherine Huang, who was of counsel to the law firm, and Kate Anderson served as the principal attorneys on the case. Huang billed at a discounted hourly rate of $500 and Ms. Anderson billed at a discounted hourly rate of $400. (Id.)  The Court finds that these rates are reasonable given the skill and experience of the attorneys.[4]

GLW billed Madsen a total of $206,038.00 for 454.1 hours of attorney time

---

[3] Adams billed .3 hours at $295 and 15.95 hours at $200 for review of the complaint in this case and initial analysis and research regarding the case. The Court finds these rates and the number of hours expended to be reasonable.

[4] After graduating from Yale Law School, Ms. Huang clerked for the Third Circuit Court of Appeals. (Huang Decl. ¶ 12.) She joined Munger, Tolles & Olson in 2002 where she became a partner. In 2013, Huang left Munger to start her own law practice, the Law Office of Katherine Huang. In 2014, she formed Huang Ybarra Singer & May LLP with her other partners. Kate Anderson received her J.D. from the University of Chicago and clerked for the D.C. Circuit Court of Appeals. (Huang Decl. ¶ 15.) Anderson was an associate at Munger, Tolles & Olson LLP from 2003 to 2010.

1  incurred between October 2013 and August 2014.  The Court has reviewed the
2  time records (Ex. A to Huang Decl.) and finds the hours to be reasonable.

3  Ms. Huang explains that the time on GLW's July 2014 and August 2014
4  invoices, amounting to $35,921, should be allocated to the litigation of MMI's
5  counterclaims, because the work related principally to preparation for the
6  depositions of Ed Graubart and Jeff Moore.  (Huang Decl. ¶ 19.)  As for the time
7  billed prior to July 2014 ($170,117.00), Huang explains that the majority of her time
8  was spent on tasks pertinent to both MMI's counterclaims and the defense of
9  NuVasive's affirmative claims, such as propounding and responding to discovery
10 and motion practice.  (Huang Decl. ¶ 18.)  Huang reasons that because this work
11 would have had to be done even if GLW's sole task was defending Madsen against
12 the claims brought by NuVasive, all of this time should be allocated entirely to the
13 defense of NuVasive's affirmative claims.

14 The Court does not agree that work pertinent to both MMI's counterclaims
15 and the defense of NuVasive's affirmative claims should be allocated entirely to
16 the affirmative claims.  Even if the work would have had to be done absent MMI's
17 counterclaims, surely, the presence of the counterclaims required more time to be
18 devoted to the tasks.  The Court believes that a fairer allocation for this type of
19 blended work performed at this stage of the litigation would be 50% to MMI's
20 counterclaims and 50% to NuVasive's affirmative claims.  Accordingly, the Court
21 awards the $206,038.00 billed by GLW, with $85,058.50 allocated to NuVasive's
22 affirmative claims and $120,979.50 allocated to MMI's counterclaims.

23 Upon leaving GLW, Ms. Huang served as counsel for Madsen through her
24 professional corporation, The Law Office of Katherine Huang, P.C. ("Huang Law").
25 Ms. Huang billed 30.1 hours in July 2014 at a discounted hourly rate of $500,
26 totaling $15,050.00.  (Ex. B to Huang Decl.)  The Court has already found Ms.
27 Huang's hourly rate to be reasonable and finds the number of expended hours to
28 be reasonable as well.  Ms. Huang again posits that because she cannot allocate

any portion of these fees (for work related to discovery and a settlement conference) to only MMI's counterclaims, the entirety of the fees should be allocated to NuVasive's affirmative claims. For the reasons discussed above, the Court allocates half of the fees ($7,525) to NuVasive's affirmative claims and the other half to MMI's counterclaims.

Huang Ybarra Singer & May LLP ("HYSM") was formed in August 2014. (Huang Decl. ¶ 21.) Initially, HYSM served as co-counsel with GLW but then became sole counsel in November 2014. Partners Joseph Ybarra and Aaron May represented Madsen at trial. Ms. Huang and partners Carlos Singer and Grant Gelberg provided supporting work during the trial. All of the partners billed at a rate of $500 per hour. The Court finds this rate more than reasonable given the qualifications of the attorneys.[5] NuVasive complains that MMI used partner-level attorneys for all stages of the litigation. But in light of the exceedingly reasonable hourly rate of these experienced attorneys, who would be able to work more efficiently than less experienced associates, the Court will not make any deduction due to the use of partners.[6]

From August 1, 2014, through and including March 31, 2016, HYSM billed a total of 1,639.33 hours, amounting to $819,666.53. (Ex. C. to Huang Decl.) The Court finds these hours to be reasonable in light of the amount of motion practice and trial preparation that was necessary in this case.[7] Ms. Huang suggests

---

[5] Joseph Ybarra was a partner at Munger, Tolles & Olson LLP until 2014. Aaron May was an attorney at Munger, Tolles & Olson LLP for six years before he became an Assistant United States Attorney in Los Angeles. Grant B. Gelberg and Carlos A. Singer are also very experienced attorneys with impressive backgrounds. Their biographies can be found at http://hysmlaw.com/attorneys/

[6] NuVasive argues that in addition to failing to use lower level attorneys, MMI routinely participated in excessive "telephone conferences" between experienced co-counsel at GLW and, later, between GLW and HYSM following the formation of HYSM. The Court has reviewed the invoices and does not find that there were excessive telephone conferences among the partners.

[7] NuVasive complains about "block billing" However, attorneys routinely group tasks

allocating 50% of HYSM's attorney's fees to MMI's counterclaims and the other 50% to NuVasive's affirmative defenses. (Huang Decl. ¶ 25.) The Court does not find this to be a reasonable allocation.

As this case progressed, MMI's counterclaims began to eclipse NuVasive's claims. After the Court ruled on the cross-motions for summary judgment in July of 2015, NuVasive's claims were reduced to the missing disposables claims and the claims based on disclosure of confidential information. Meanwhile, MMI's interference claims and claims for unjust enrichment, unfair competition, and breach of contract (failure to pay commissions) remained in play. Those counterclaims involved many witnesses, including expert witnesses on damages. The counterclaims also gave rise to motions for sanctions for spoliation of evidence.

Prior to trial, NuVasive dismissed its claims based on disclosure of confidential information. All of the motions in limine filed before trial concerned the counterclaims. Madsen even filed a pre-trial motion to realign the parties, arguing that the "primary dispute" remaining in the case was whether MMI was entitled to compensatory and punitive damages on account of NuVasive's solicitation and hiring of nearly all of MMI's employees. Madsen pointed out that NuVasive's claimed damages for lost inventory barely exceeded the $75,000 jurisdictional minimum.

On day three of the trial, NuVasive dismissed its affirmative claims based on missing disposables. The remainder of the trial was dedicated to the counterclaims.

Given the increasing prominence of MMI's counterclaims and the fact that

---

together to some extent to avoid excessively lengthy bills and because it can be difficult to parse out exactly what amount of time was spent on a specific task. HYSM's billing practices are typical of law firms and have not hindered the Court's task of determining the reasonableness of the hours expended.

almost all of the trial and the post-trial briefing concerned the counterclaims, the Court finds that a more reasonable allocation of HYSM's time is 70% to MMI's counterclaims and 30% to NuVasive's affirmative claims. Accordingly, the Court awards HYSM's fees through March 31, 2016, totaling $819,666.53, allocating $573,766.57 to MMI's counterclaims and $245,899.96 to NuVasive's affirmative claims.

With their reply brief, Madsen submitted additional invoices from HYSM, reflecting work performed from April 1, 2016, through May 19, 2016, in addition to time that had been inadvertently omitted from previous invoices. (Ex. K to Supp. Huang Decl.) These bills are for 122.7 hours of work on the trial, the motion for attorney's fees and bill of costs, and post-trial motions. The Court finds that these hours are reasonable. However, it appears from the July 2016 invoice that an $11,000 discount was given to Madsen to reflect a fee cap for work before judgment. On that invoice, a total of $11,000 in attorney's fees and $3,068.37 in costs were incurred in connection with pre-judgment work. To account for the discount, the Court will deduct $11,000 from this fee request. Therefore, the total amount of fees awarded on the additional invoices is $50,350.

The Court allocates the $50,350 as follows: $35,575 for MMI's counterclaims and $14,775 for NuVasive's affirmative claims. Madsen suggests allocating all $24,000 of the fees incurred in connection with the motion for attorney's fees and bill of costs to NuVasive's affirmative claims. However, the Court finds that a 50/50 split is more reasonable. $20,800 was incurred in connection with the post-trial briefing and is allocated solely to MMI's counterclaims. $5,550 was incurred for work that related to both post-trial briefing and attorney's fees/costs and is allocated evenly between MMI's counterclaims and NuVasive's affirmative claims.

In sum, the Court awards Madsen attorney's fees as follows:

| Law Firm | MMI Counterclaims | NuVasive Claims | Overall |
|---|---|---|---|
| Sully | | $ 125.00 | $ 125.00 |
| MAC | $0 | $0 | $0 |
| Adams Law Group | $0 | $ 3,278.50 | $ 3,278.50 |
| GLW | $120,979.50 | $ 85,058.50 | $ 206,038.00 |
| Huang Law Office | $ 7,525.00 | $ 7,525.00 | $ 15,050.00 |
| HYSM (invoices through 3/31/16) | $573,766.57 | $245,899.96 | $ 819,666.53 |
| HYSM (invoices after 3/31/16) | $ 35,575.00 | $ 14,775.00 | $ 50,350.00 |
| **Total:** | **$737,846.07** | **$356,661.96** | **$1,094,508.03** |

B. <u>Non-Taxable Costs</u>

Madsen seeks reimbursement of its non-taxable costs. Madsen contends that because section 12.1(b) of the ESR Agreement expressly provides that the prevailing party shall be entitled to "recover all costs it incurred in connection therewith," Madsen is entitled to recover costs beyond those specified in Cal. Civ. Proc. Code § 1033.5. Although the Court will, within its discretion, allow the recovery of some non-taxable costs under Cal. Civ. Proc. Code § 1033.5(c)(4), the Court will not grant costs that are not allowable under Cal. Civ. Proc. Code § 1033.5(b).

Section 1033.5(a) lists allowable items of costs. Section 1033.5(b) provides that the following items are not allowable as costs, except when expressly authorized by law: (1) fees of experts not ordered by the court; (2) investigation

expenses in preparing the case for trial; (3) postage, telephone, and photocopying charges, except for exhibits; (4) costs in investigation of jurors or in preparation for voir dire; (5) transcripts of court proceedings not ordered by the court. Section 1033.5(c)(4) provides, "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion."

In Bussey v. Affleck, 225 Cal. App. 3d 1162, 1166 (1990), the California Court of Appeal (Fourth District) held that where a contract provides for payment of costs and attorney's fees, expert witness fees and photocopying charges are recoverable as attorney's fees if they represent an expense ordinarily billed to a client and not included in the overhead component of the attorney's hourly rate. However, subsequently, in Ripley v. Pappadopoulos, 23 Cal. App. 4th 1616, 1627 (1994), the California Court of Appeal (Third District) disagreed with Bussey, holding that even if expert witness fees or other disallowed costs may be recovered under a contractual provision, they must be specifically pleaded and proven at trial rather than included in a memorandum of costs.

California Court of Appeal cases after Ripley have overwhelmingly followed Ripley and rejected Bussey. See Carwash of America-PO LLC v. Windswept Ventures No. 1, LLC, 97 Cal. App. 4th 540, 544 (2002) (listing cases). In Hsu v. Semiconductor Systems, Inc., 126 Cal. App. 4th 1330, 1342 (2005), the California Court of Appeal (Fourth District) said of Bussey, "We disavow this court's previous adoption of that view as an unwarranted conflation of fees and costs." The court confirmed that "[r]ecovery of costs provided by contract must be specially pleaded and proven at trial, and not awarded posttrial as was done here." Id. at 1341. See also Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1280 (2007) (explaining how "[e]very subsequent published decision confronting this issue has criticized and rejected Bussey's approach"); United States Fidelity & Guaranty Co. v. Scott Companies, Inc., 2007 WL 2729330, at * 7 (N.D. Cal. Sept. 18, 2007) (following Ripley and denying request for expert fees because the fees were not expressly

pled and proven).

The published California Court of Appeal cases upon which Madsen relies are distinguishable. In <u>Arnst Contracting Co. v. St. Paul Fire & Marine Ins. Co.</u>, 47 Cal. App. 4th 464, 491(1996), the litigation expenses were pleaded and proven pursuant to a procedure stipulated by the parties. In <u>Thrifty Payless, Inc., v. Mariners Mile Gateway, LLC</u>, 185 Cal. App. 4th 1050, 1067 (2010), the court held that where the contract specifically provided that the prevailing party was entitled to "court costs, witness and expert fees," the prevailing party did not have to specially plead and prove the expert witness fees. Here, the ESR Agreement refers to "all costs" generally.

The Court follows the weight of California authority and does not award costs that are disallowed by § 1033.5(b), specifically, the expert fees of Elaine White, FedEx charges,[8] photocopying charges, and transcripts of court proceedings not ordered by the Court. After reviewing the remaining costs, the Court, in its discretion, allows some costs as reasonably necessary to the conduct of the litigation, § 1033.5(c)(2), and disallows others.

The chart below summarizes the Court's findings on the requested costs:

| Description | Amount | Ruling | Allocation |
|---|---|---|---|
| Fees of Expert Elaine White (Ex. D to Huang Decl.) | $82,468.57 | Disallowed | |
| Fees of discovery vendors (electronic storage, collection and processing) | $68,335.10 | Disallowed. The Court is not convinced that the fees are reasonably necessary as opposed to just beneficial to preparation of the | |

---

[8] See <u>Ripley</u>, 23 Cal. App. 4th at 1627 (holding that Federal Express charges are expressly disallowed—presumably because they constitute "postage").

| Description | Amount | Ruling | Allocation |
|---|---|---|---|
| (Ex. E to Huang Decl.) | | litigation.[9] | |
| Videotaped depositions (Ex. F to Huang Decl.) | $3,715.40 | Allowed under § 1033.5(a)(3)(A) | $2,022.90 – MMI $1,692.50 – NuVa |
| Travel expenses (Ex. G to Huang Decl.) | $29,957.86 | Allowed | $21,853.75 – MMI $8,104.11 – NuVa |
| Misc. trial expenses (Ex. H to Huang Decl.) | $11,808.72 | Allow $4,068.37 ($1,000 for editing of videos and $3,068.37 for creation of graphics for use at trial). Other costs disallowed by statute or not reasonably necessary. | $2,034.19 – MMI $2,034.19 – NuVa |
| Delivery charges (Ex. I to Huang Decl.) | $5,462.00 | Allow $2,958. The Court does not grant FedEx charges and limits charges for delivery of documents to court to $25 per delivery. Other misc. delivery & messenger charges disallowed. | $1,479 – MMI $1,479 – NuVa |
| Copying charges for depositions (Ex. J to Huang | $168.98 | Disallowed. | |

---

[9] In cases where costs are sought under federal law, courts have allowed ediscovery costs for scanning or converting electronically–stored files into usable formats because such tasks fall within 28 U.S.C. § 1920(4), which allows "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." See Linex Tech., Inc. v. Hewlett-Packard Co., 2014 WL 5494906, at * 6 (N.D. Cal. Oct. 30, 2014). However, courts have not allowed recovery of costs for the hosting of electronic data or for e-gathering and e-processing costs akin to the intellectual effort involved in the production of documents or the research, analysis, and distillation of data. See eBay Inc. v. Kelora Systems, LLC, 2013 WL 1402736, at * 7 (N.D. Cal. Apr. 5, 2013); Ancora Tech., Inc. v. Apple, Inc., 2013 WL 4532927, at * 3 (N.D. Cal. Aug. 26, 2013).

| Description | Amount | Ruling | Allocation |
|---|---|---|---|
| (... Decl.) | | | |
| MAC Costs (Ex. B to Madsen Decl.) | $376.15 | Disallowed because they pertain to Nevada action. | |
| Sully Costs (Ex. D to Madsen Decl.) | $837.81 | Disallowed. Unclear what $796.30 court reporter fee was for. Remainder of costs consist of postage and fax. | |
| Adams Law Group costs (Ex. E to Madsen Decl.) | $290.94 | Disallowed. Unclear what costs were for. | |
| Additional discovery vendor costs (Ex. L to Supp. Huang Decl.) | $2,986.25 | Disallowed. | |
| Additional Delivery Costs (Ex. M to Supp. Huang Decl.) | $285.94 | Allow $100. Court will allow $25 only for each delivery of papers to the court. Additional fee appears to be for printing document for delivery and is disallowed. FedEx fee disallowed. | $50 – MMI<br>$50 – NuVa |
| **Total:** | | | MMI - $27,439.84<br>NuVa – $13,359.80<br>Total: $40,799.64 |

C. Motion to Retax Costs

In an order filed on April 21, 2016, the Clerk taxed costs in the amount of $35,898.76 in favor of Madsen. NuVasive has filed a motion to retax those costs.

First, NuVasive argues that Madsen is not entitled to all of its costs because

it did not prevail on its breach of contract and unjust enrichment claims. But for the same reasons as discussed above, Madsen is clearly the prevailing party in this case. "Courts consistently confirm that '[a] party in whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs under Rule 54(d).'" San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement System, 568 F.3d 725, 741 (9th Cir. 2009) (quoting d'Hedouville v. Pioneer Hotel Co., 552 F.2d 886, 896 (9th Cir. 1977)). It is not "necessary for a party to prevail on all of its claims to be found the prevailing party." Id.

Next NuVasive argues that the depositions of NuVasive's former CEO, Alex Lukianov and Pual Iezzi were taken for the purpose of mere discovery and did not result in any testimony of consequence to the issues in this case. Under CivLR 54.1(b)(3), costs incurred in connection with taking depositions are allowable. "Depositions need not be introduced in evidence or used at trial to be taxable so long as at the time it was taken it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." Id.

The Court is satisfied that at the time the depositions of Messrs. Lukianov and Iezzi were taken, it could reasonably be expected that the depositions would be used for trial preparation. Judge Brooks allowed Madsen to depose Lukianov after Madsen submitted a letter brief [Doc. 64] setting forth information indicating that Lukianov personally approved of the terms of NuVasive's offer to buy out MMI in July 2012 and had knowledge of the events surrounding MMI's termination. As for Iezzi, he was designated by NuVasive as an expert witness on the topics of types of inventory and unit costs of inventory. Because Iezzi was designated as a testifying expert, it was necessary for Madsen to depose Iezzi in preparation for trial.

Finally, NuVasive urges the Court to suspend consideration of the costs until after the post-trial motions are decided. This argument is now moot because the Court has already ruled on the post-trial motions [Doc. 356].

The Clerk's Order Taxing Costs is affirmed and NuVasive's Motion to Retax Costs is denied.

### III. CONCLUSION

For the reasons discussed above, Madsen's Motion for Attorney's Fees and Non-Taxable Costs [Doc. 339] is **GRANTED IN PART** and **DENIED IN PART**, and NuVasive's Motion to Retax Costs [Doc. 345] is **DENIED**. The Court grants Madsen attorney's fees in the amount of $1,094,508.03, with $737,846.07 allocated to MMI's Counterclaims and therefore payable to MMI, and $356,661.96 allocated to NuVasive's affirmative claims and therefore payable jointly to MMI and Kris Madsen. The Court also grants nontaxable costs in the amount of $40,799.64, with $27,439.84 allocated to MMI's Counterclaims and payable to MMI, and $13,359.80 allocated to NuVasive's affirmative claims and payable jointly to MMI and Kris Madsen. The Clerk's Order Taxing Costs is affirmed. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: July 1, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court